IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAMAR COLLINS,                         :                CIVIL ACTION
    Plaintiff,                          :
                                        :
    v.                                  :
                                        :
RICHARD JONES, et al                   :                NO. 2:13-cv-07613-DS
    Defendants.                         :

## MEMORANDUM OPINION

DAVIR R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                              February  24, 2015

## I.    INTRODUCTION

Defendants, Officer Richard Jones and Chief Francis Priscopo of the Trainer Borough Police Department move for summary judgment against Plaintiff, Lamar Collins.  Collins has sued Jones and Priscopo, along with Delaware County Detective Robert Lythgoe and ten John Doe Defendants, members of the Trainer Borough Police Department.  By his complaint, Plaintiff seeks damages for harm he claims to have suffered from malicious and vindictive prosecution initiated by these officers.  For the reasons set forth below, we will grant Defendants' motion in part and deny it in part.

## II.    PROCEDURAL HISTORY

On December 27, 2013, Collins filed his first complaint pursuing claims arising out of his October 2012 detention by police and the subsequent filing of criminal charges that were lodged against him.  (Doc. No. 1.)  The Complaint was amended on April 14, 2014.  (Doc. No. 17.) Defendants moved to dismiss the amended claims under Fed. R. Civ. P. 12(b)(6). (Doc. No. 18, 19.) District Court Judge Michael M. Baylson granted that motion in part, dismissing, without prejudice,

Plaintiff's claims for selective enforcement, First Amendment retaliation, municipal liability, and injunctive relief.  (Order, Doc. No. 28, 30.)  Collins then filed his Second Amended Complaint[1] on July 17, 2014 (hereinafter "the Complaint") against Officer Jones, Chief Priscopo, Detective Lythgoe and the ten John Doe Defendants asserting claims for malicious and vindictive prosecution under both state and federal law.  (Compl., Doc. No. 33)  Detective Lythgoe has since been dismissed from the case by stipulation.  (Doc. No. 48.)  We also dismiss the John Doe Defendants.[2]  We therefore have before us only two remaining claims against Jones and Priscopo, both brought under state and federal law.

In the first count of his Complaint, Collins asserts that the remaining Defendants are liable for malicious prosecution under Pennsylvania state law as well as under federal law through 42 U.S.C. § 1983.  (Compl., Doc. No. 33, ¶ 30-38.)  Collins sets out that these Defendants lacked probable cause to "stop, arrest, search, charge and/or accuse Plaintiff", that he was "seized from the time he was arrested through the time he was imprisoned," that the Defendants "deliberately ignored and failed to advise prosecutors of evidence and accounts of the event that exonerated Plaintiff", and that the underlying criminal action ended in Plaintiff's favor.    (Compl., Doc. No. 33, ¶ 34-37.)  These allegations give rise to his two legal claims for malicious prosecution.  (Compl., Doc. No. 33, ¶ 38.)

In the Second Count, Plaintiff asserts that he was subject to vindictive prosecution by

---

[1] The Second Amended Complaint is the final complaint in this action and thus supersedes all others.  *W. Run Student Hous. Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.,* 101 F.3d 1492, 1504 (3d Cir. 1996)).

[2] While Plaintiff has sued various John Doe Defendants, discovery has ended and Plaintiff has made no assertion that any additional parties could be found liable for the torts he has complained of.  Accordingly, we agree with Defendants that these John Doe Defendants must be dismissed.  *See Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009) (internal citations omitted) (dismissing John Doe defendants after reasonable discovery when

*(continued…)*

Defendants and "prosecuted solely because he failed to cooperate" with law enforcement.  (Compl., Doc. No. 33, ¶ 39-42.)  Plaintiff claims that he therefore suffered "a violation of the Fourteenth Amendments [sic] of the United States Constitution, actionable through 42 U.S.C. § 1983, et seq., and common law." (Compl., Doc. No. 33, ¶ 42.) Defendants Jones and Priscopo filed their Motion for Summary Judgment on November 13, 2014.  (Def. MSJ.)  Plaintiff filed a responsive brief opposing Defendants' Motion on December 23, 2014.  (Pl. Resp.)  The matter is now ripe for resolution.

### III.    FACTUAL BACKGROUND[3]

On October 20, 2012, Collins was in his car leaving his home with some $3,000 in cash[4] in his possession.  (Collins Dep. 39-5, at 36-55.).  He was on his way to make a rental payment to his landlord and to deposit the rest of the money in the bank when he was pulled over by Officer Jones in an unmarked car.  (*Id.* at 27-28, 36-55.)  He was ordered out of his car and placed in handcuffs.  (*Id.* at 51-52.)  According to Collins, Jones told him that he (Jones) "knew" that he (Collins) had drugs in his possession.  (*Id.* at 51.)  Collins denied the accusation.  (*Id.*)  Jones then began a preliminary search of the car, finding and seizing the cash, despite Collins's refusal to consent to the search.  (*Id.* at 54.)  Pursuant to Collins's request, Chief Priscopo then came to the scene.  (Collins Dep., Doc. No. 39-5, at 58-59.)  Priscopo spoke with Jones and then told Collins that he had

---

Plaintiff failed to amend her complaint to replace said defendants with named parties); *see generally* Fed. R. Civ. P. 21.

[3] Given the "no genuine dispute as to any material fact" standard of summary judgment, for purposes of this opinion, the following recitation of facts emphasizes those which are supportive of or relevant to Plaintiff's own claims, notwithstanding the fact that Defendant disputes much of these allegations.  *See* Fed. R. Civ. P. 56(a).

[4] Collins testified that he had received a $3,500 refund from his college on a prepaid debit card and had slowly been taking out cash from ATMs using the card.  (Collins Dep., Doc. No. 39-5, at 28-29, 32-33.)  He noted that he had approximately $3,000 in cash on October 20, 2012 which was partially from the refund and partially revenue from his studio business. (*Id.* at 36.)  Collins was uncertain as to the sum of money he had in his car when he was detained but testified that it was at least $3,000. (*Id.* at 36.)

probable cause for the search, that the car would be towed, and he would be booked at the police station.  (*Id.* at 61.)  Priscopo then left the scene.  (*Id.* at 65-66.)

Jones then told Collins that he had information from a neighbor that Collins was dealing hydroponic marijuana and that he needed to cooperate with the police by providing the names of his suppliers.  (*Id.* at 65, 68-69.)  Collins was not initially receptive, but after having been told by Jones that he (Jones) would "find something [his] car," he told him that he would be cooperative in order to appease Jones and secure his own release.  (*Id.* 66, 77-79.)  Jones agreed to the release and returned the car, but not the cash.  (Collins Dep., Doc. No. 39-5, at 83-84.)  During this discussion, Jones pressed Collins seeking consent to complete the search of the car which Collins then agreed to.  (*Id.* at 81-82.)  According to Collins, Jones then seized a bag found on the seat of the car which was described by Collins as containing a "like brown like pepper" sort of substance which Jones concluded was marijuana.  (*Id.* at 82-83.)  Collins requested that Jones test the material, but Jones refused.  (*Id.* at 83.)  Collins asserted that he believed the material which Jones suspected to be marijuana was nothing more than loose bits of tobacco coming from an empty cigarette pack in the back of his car which was placed in a bag put in his driver's seat by the officer.  (*Id.* at 133-35.)  Two days later, with no charges yet filed, Collins called Jones.  (*Id.* at 94.)  During this call, which Collins was surreptitiously recording,[5] Jones again attempted to obtain Collins's cooperation with law enforcement. [6]  (Collins Dep., Doc. No. 39-5, at 99.)  Collins also claimed that Jones had taken $90

---

[5] Collins tape recording of the conversation was submitted with the summary judgment motion.  (Doc. No. 39-9.)  The recording is 12 minutes and 14 seconds long but does not appear to be the entirety of the conversation in that it cuts off abruptly in the middle of a sentence.  (*Id.*)

[6] We note that Jones did not consent to the phone call being recorded and that Pennsylvania law generally bars admission of such recordings unless both parties consent to the recording. 18 Pa. Cons. Stat. §§ 5704(4); 5721.1 (a). However, this case involves federal question jurisdiction and thus federal law, not state law, governs the admissibility of evidence. *See generally* Fed. R. Evid. 101.  There is no Federal authority barring the admissibility of a recording where only one party consents to the recording.  *See* 18 U.S.C. 2511(2)(d) ("It shall not be unlawful under this chapter for a person not acting

*(continued...)*

of the approximate $3,000 in cash he had in the car.  (Phone Recording, Doc. No. 39-9.)  Jones

disregarded this allegation and repeated to Collins that he was "a known drug dealer."  (*Id.*)

On October 23, 2012, Collins visited the Delaware County District Attorney's office where

he spoke with Detective Lythgoe and filed a private criminal complaint against Jones for harassment.

 (Collins Dep., Doc. No. 39-5, at 104-07.)  The District Attorney's Office, however, declined to

authorize the charge.  (*Id.* at 160.)  Collins was then told that he would face criminal charges arising

out of the October 20, 2012 incident.  (*Id.*)

Collins, in fact, did receive notification by mail that he was being charged with possession of

drug paraphernalia and a controlled substance.  (*Id.* at 113-14; State Ct. Docket, Doc. No. 39-10, at

2.)  The complaint supporting that charge was signed by Officer Jones and dated October 20, 2012

but was not issued by the magisterial district judge until November 5, 2012.[7]  (Crim. Compl., Doc.

No. 50-10, at 1-5.)  Collins testified that, due to the charges, he was required to "submit fingerprints

[and] papers to go down to like the bail office."  (Collins, Dep., Doc. No. 39-5, at 113-14.)  Bail was

set at $10,000 unsecured.  (State Ct. Docket, Doc. No. 39-10, at 2.)

On January 2, 2013, the Lima Regional Laboratory of the Pennsylvania State Police's Bureau

of Forensic Services provided laboratory testing results performed on a Ziploc bag and two shopping

---

under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."); *c.f. Tarnoff v. Wellington Fin. Corp.*, 696 F. Supp. 151, 152-53 (E.D. Pa. 1988) (finding, in a diversity case, that evidence from a recorded conversation where one party did not consent was admissible notwithstanding its violation of Pennsylvania state law); *Montone v. Radio Shack, a Div. of Tandy Corp.*, 698 F. Supp. 92, 94 (E.D. Pa. 1988) (accord).  Accordingly, we find that the recording Collins made is admissible and we consider it as part of the record relevant to the Motion for Summary Judgment.

[7] Jones testified that when he learned of the complaint filed against him, he had ascertained that Collins had no intent to cooperate with him and therefore filed the charges.  (Jones Dep., Doc. No, 39-5, at 47-49.)  He explained that he had drafted the complaint earlier, consistent with the October 20, 2012 date on parts of the document, and simply filed the charges the "next time [he] went up to the drug court."  (*Id.*)

bags taken from Collins's car.  (Lab Report, Doc. No. 39-12.)  The testing results were negative for the presence of any controlled substance.  (*Id.*)  Jones noted that he only field tested the vegetable matter he allegedly found in the car and that this substance was not sent in for further testing per the decision of the District Attorney's office.  (Jones Dep., Doc. No. 39-6, at 53-54.)  Plaintiff, nonetheless, waived his preliminary hearing despite the negative test results. (Collins Dep., Doc. No. 39-5, at 174-75.)  He continued on unsecured bail.  (*Id*. at 113-14.)

Pursuant to a Writ of Habeas Corpus, Judge Kevin F. Kelly of the Delaware County Court of Common Pleas dismissed the criminal information lodged against Plaintiff on August 5, 2013. (Dismissal Order, Doc. No. 50-11, at 1-2.)  Given the negative lab results, he found the charges to be unsubstantiated.  (*Id.*)  On the same day, he also issued an order denying the state's forfeiture petition and granting Plaintiff's petition for the return of his property.  (Seizure Order, Doc. No. 50-11, at 3-4.)  He determined that, because the criminal charges were dismissed, the seized property would be returned to Collins.  (*Id.*)

### IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (a court must grant a motion for summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  *Id.*   In reviewing the record before us, any "inferences to be drawn from the

underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## V.    DISCUSSION

We begin by addressing Plaintiff's malicious prosecution claims and then discuss his vindictive prosecution claims. In both cases, we address the claims arising under federal law first. [8]

### A.    Malicious Prosecution Under Federal Law

#### 1.    The Legal Standard

Plaintiff's Complaint sets out that he was subject to malicious prosecution under both the "Fourth and Fourteenth Amendments" of the Constitution. (Compl. ¶ 38.)   However, his brief opposing the motion mentions only the Fourth Amendment.[9] (Pl. Resp., at 11.) Section 1983 claims involving malicious prosecution generally invoke the protections of the Fourth Amendment. *E.g., Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998). Moreover, the Supreme Court has "held that where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293, 119 S. Ct. 1292, 1296, 143 L. Ed. 2d 399 (1999) (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)) (internal quotations omitted); *see also Washington v. Hanshaw*, 552 F. App'x 169, 172-73 (3d Cir. 2014).

---

[8] Plaintiff initially objects to Defendant's Motion for Summary Judgment on procedural grounds. Plaintiff argues that Defendants' Motion for Summary Judgment is defective in that it did not comply with Local Rule 7.1's mandate that every motion "be accompanied by a form of order which, if approved by the court, would grant the relief sought by the motion." (Pl. Resp., at 6.) We reject this argument. Defendants' Motion for Summary Judgment was, in fact, accompanied by just such a proposed order. (Doc. No. 39, at 1.)

[9] To the extent Plaintiff were to be arguing that he was denied procedural due process, we would in any event reject the claim in that there is no indication that the process provided to Plaintiff was lacking. *See Washington v. Hanshaw*, 552 F. App'x 169, 174 (3d Cir. 2014). In fact, the record makes clear that a writ of habeas corpus was successfully employed to
*(continued...)*

The Third Circuit has made clear that to prove a Section 1983 malicious prosection claim:

> under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (footnote omitted) (citing *Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003)).[10]

We will first discuss the initiation of the criminal proceeding. The result of that proceeding, however, clearly ended in Plaintiff's favor given Judge Kelly's dismissal. This issue is not contested and thus the second element requires not further attention. We will then address the issues of probable cause and malice together given that they are interrelated and subject to simple resolution. Lastly, we will address the critical question of whether Plaintiff suffered a deprivation of liberty consequent to legal process.

## 2.    Initiation of the Prosecution

Defendants contend that they did not initiate the criminal proceeding because it was actually the prosecutor who brought the charges and "[P]laintiff has no evidence that Jones made any false assertions or omissions." (Def. MSJ, at 18-19.) It is uncontroverted that Officer Jones and Chief Priscopo did not directly initiate the prosecution. This function was in fact undertaken by the prosecutor. This is not enough, however, to defeat a malicious prosecution claim against the officers as "[a]n officer may  . . .  be considered to have initiated a criminal proceeding if he or she

---

dismiss the criminal charges as well as the interrelated civil forfeiture proceeding.

[10] This is distinguished from the analogous Pennsylvania common law tort in that the common law does not require a deprivation of liberty consequent to legal process. *See Bradley v. Gen. Acc. Ins. Co.*, 778 A.2d 707, 710 (Pa. Super. 2001).

'knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion.'" *Gatter v. Zappile*, 67 F.Supp.2d 515, 521 (E.D.Pa.1999) (quoting *Merrero v. Micewski,* No. Civ. A. 96–8534, 1998 WL 414724, at *6 (E.D.Pa. July 22, 1998)).

Here, the criminal complaint and its associated affidavit of probable cause were signed and sworn to by Officer Jones only.  (Crim. Compl & Affidavit of Prob. Cause, Doc. No. 50-10, at 1-5.) Plaintiff contends that Jones knowingly provided false information in the affidavit of probable cause when he fabricated information about a "confidential informant", the smell of marijuana, and the results of a positive field test.  (Pl. Resp., at 8-9.)  This information was presented to and relied upon by the prosecutor who then brought the criminal charges.  (Crim. Compl & Affidavit of Prob. Cause, Doc. No. 50-10, at 1-5.)   Under these circumstances, the fact that Jones did not directly initiate the prosecution cannot alone preclude his claim from going forward.  There is a genuine issue of material fact as to whether he knowingly relayed false information to the prosecution.  Summary judgment cannot be granted as to Jones on these grounds.

We also note that Plaintiff has directed us to no evidence supportive of the claim that Chief Priscopo took part in the initiation of the charges.  While the Chief was briefly present at the scene after Collins was pulled over and was present for a short time after Collins was detained at the station, there is insufficient evidence to show that Chief Priscopo played any actual role in relaying information to the prosecutor.  In Plaintiff's brief, he notes that "Defendant Jones conjured up facts set forth in the affidavit of probable cause to justify his actions in arresting Plaintiff and seizing his money" but makes no attempt to argue, let alone point to evidence establishing, that Chief Priscopo was complicit in presenting the allegedly false information to the prosecutor.  (Def. Resp., at 5.)  The evidence presented by Collins, if accepted, would show that Jones was the architect of the case against Collins, not Chief Priscopo.  Nor was Chief Priscopo "the moving force" behind Jones's

decision to pursue the case as would support a claim of supervisory liability.  *See Sample v. Diecks*, 885 F.2d 1099, 1116-18 (3d Cir. 1989) (internal citations omitted) ("Supervisory liability in [the Section 1983] context presents the question whether [the supervisor] was responsible for—whether he was the 'moving force [behind], [a plaintiff's] constitutional tort.").    There is simply no competent evidence that Chief Priscopo was responsible for knowingly relaying false information to the prosecutor.   Accordingly, we conclude that Plaintiff has failed to establish a genuine issue of material fact concerning Chief Priscopo's role in the initiation of the criminal proceeding against Collins.  We will grant Chief Priscopo's motion as to that claim.

### 3.    Probable Cause and Malice

We next address Defendants' claim that there is no issue of material fact as to the presence of probable cause.  (Def. MSJ, at 17-18.)  "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing *Dunaway v. New York*, 442 U.S. 200, 208 n. 9 (1979)).  Defendants assert that Jones had suspected Collins, who had been both arrested for and, in one instance, convicted of drug offenses several years prior,[11] of being involved in the marijuana

---

[11] Collins's criminal history is described in the affidavit of probable cause.  (Crim. Compl & Affidavit of Prob. Cause, Doc. No. 50-10, at 5.)  Plaintiff asserts that his criminal history is not relevant and is, nevertheless, so highly prejudicial that it must be deemed inadmissible.  (Pl. Resp. Counter-Statement, ¶ 65.)  However, case law is to the contrary and we find that evidence that the police had considered Collins's criminal history was relevant to probable cause and relatedly to the Defendants' underlying reliance on the tip provided by the confidential informant.  *See, United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993) ("Prior convictions are a relevant consideration in determining probable cause."); *United States v. Dyer*, 580 F.3d 386, 392 (6th Cir. 2009) (accord); *United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008) (criminal history may corroborate a confidential informant's assertions); *United States v. Majeed*, No. CRIM. 08-186, 2009 WL 2393439, at *7 (E.D. Pa. Aug. 4, 2009) ("criminal records are relevant to a determination of probable cause"); *United States v. Gatson*, No. 13-705, 2014 WL 7182275, at *8 (D.N.J. Dec. 16, 2014) (citing *United States v. Padro*, 52 F.3d 120, 123 (6th Cir.1995)) (criminal history, including that concerning arrests, "can be considered when determining if there is probable cause"); *see also Jones v. United States*, 362 U.S. 257, 271 (1960) *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980) ("that petitioner was a known user of narcotics made the [drug] charge against him much less subject to scepticism than

*(continued…)*

trade because Jones and Priscopo were told by a confidential informant, who resided in the Trainer

area, that Collins would be in possession of a large amount of high grade marijuana at the time he

was pulled over.  (Def. MSJ, at 16-18.)  While Jones and Priscopo both claim that the informant

made such statements via voicemail, Collins maintains that the informant does not exist.  (Jones

Dep., Doc. No. 39-6, at 20-21; Priscopo Dep., Doc. No. 39-7, at 10-11; Pl. Resp. at 3-4.)  Collins

argues that Defendants' averment is highly questionable in that he does not socialize with others in

the Trainer area, let alone sell drugs, and points out that no evidence substantiating the existence of

the informant has been offered.  (Pl. Resp. at 3-4.)  Defendants also contend that the car smelled of

marijuana while Collins counters this by pointing out that the laboratory tested on the bags found in

the car, which Jones claimed had contained marijuana, came back negative and that marijuana has

never been present in his vehicle.  (*Id.* at 3.)  Consistent with Jones's affidavit of probable cause and

their deposition testimony, Defendants next assert that there was a positive field test for the vegetable

matter found in the car.  (Def. MSJ, at 24; Affidavit of Probable Cause, Doc. No. 50-10, at 4; Jones

Dep., Doc. No. 39-6, at 51; Priscopo Dep., Doc. No. 39-7, at 31.)  Collins testified that no such

marijuana existed and that the testing never occurred despite his request that the substance be field

tested.  (Collins Dep., Doc. No. 39-5, at 83.)  No copy of the field test results has been offered to the

court.

Given the grossly disparate factual allegations presented by the parties, we cannot say as a

matter of law that probable has or has not been established.  If Collins version of the facts is accepted

by the jury, a lack of probable cause would be manifest.  There is clearly an issue of material fact

concerning whether probable existed to substantiate the criminal charges.  *See Sharrar v. Felsing*,

---

would be such a charge against one without such a history.")

128 F.3d 810, 818 (3d Cir. 1997) (quoting *Deary v. Three Un–Named Police Officers,* 746 F.2d 185,

192 (3d Cir.1984)) ("In a § 1983 action the issue of whether there was probable cause to make an

arrest is usually a question for the jury, but 'where no genuine issue as to any material fact exists and

where credibility conflicts are absent, summary judgment may be appropriate.'").

It is also the case that a jury could, if it accepted Plaintiff's testimony, also infer malice on the

part of Defendants.  The evidence from Collins that the police knowingly pursued baseless charges

as a means of applying leverage could be sufficient to support a finding of malice.  *See Lippay v.*

*Christos,* 996 F.2d 1490, 1502 (3d Cir.1993), *abrogated on other grounds*, *Albright v. Oliver*, 510

U.S. 266 (1994) (internal quotations and citations omitted) (actual malice in the context of malicious

prosecution is defined as "ill will in the sense of spite, lack of belief by the actor himself in the

propriety of the prosecution, *or* its use for an extraneous improper purpose. Malice may be inferred

from the absence of probable cause."); *Lawson v. City of Coatesville*, No. CIV.A. 12-6100, 2014 WL

4080708, at *6 n. 8 (E.D. Pa. Aug. 19, 2014).  Accordingly, we cannot grant summary judgment in

that there are issues of material fact as to the absence of probable cause and the presence of malice.

### 4.   Deprivation of Liberty Consequent to Legal Process

Plaintiff has also failed to establish a genuine issue of material fact as to whether he suffered

a deprivation of liberty *as a consequence of legal process*.  *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d

Cir. 2007) (citing *Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir.2003)); *Gallo v. City of Philadelphia*,

161 F.3d 217, 222 (3d Cir. 1998), *as amended* (Dec. 7, 1998) (finding that the Plaintiff "must show

that he suffered a seizure as a consequence of a legal proceeding").  While it is clear that Plaintiff

and his substantial sum of cash were seized at the time of the traffic stop and were held for some

time afterward, these seizures are not relevant to the malicious prosecution cause of action as they

predated, and were therefore not *consequent to*, the criminal charges, the very legal process at

issue.[12]

To support a Fourth Amendment malicious prosecution claim:

> [A]ny seizure … must be pursuant to legal process. *See Calero–Colon v. Betancourt–Lebron*, 68 F.3d 1, 4 (1st Cir.1995); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995). "Legal process" is ordinarily in the form of a warrant or a subsequent arraignment, in which case any post-arraignment seizure could be the basis for a claim. *Torres v. McLaughlin*, No. 96–5865, 1996 WL 680274, at *3 (E.D.Pa. Nov.21, 1996). Thus, an unlawful arrest pursuant to a warrant could be the basis for a malicious prosecution claim. *Calero–Colon*, 68 F.3d at 4. A wrongful warrantless arrest, in contrast, could result in a claim for false arrest, but could not support a claim for malicious prosecution. Id.

*Mateiuc v. Hutchinson*, No. CIV. A. 97-1849, 1998 WL 240331, at *3 (E.D. Pa. May 14, 1998); *see generally Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998), *as amended* (Dec. 7, 1998) (in a Section 1983 malicious prosecution claim a Plaintiff "must show that he suffered a seizure as a consequence of a legal proceeding").  In *Matieuc,* where the core facts bear marked similarity to our case, the court noted that:

> the Plaintiff was arrested following a traffic stop . . . . Thus, his arrest was not pursuant to a warrant. He was released within one hour after being taken to the state police barracks. Four days later, a criminal complaint was filed charging [him] with various offenses. He was never incarcerated or otherwise held in custody after the complaint was filed. Consequently, there was no Fourth Amendment seizure that was pursuant to legal process. Therefore, the Plaintiff cannot prevail on a section 1983 claim for malicious prosecution.

*Mateiuc*, No. CIV. A. 97-1849, 1998 WL 240331, at *3 (E.D. Pa. May 14, 1998); *see also Lopez v. Maczko*, No. CIV.A. 07-1382, 2007 WL 2461709, at *3 (E.D. Pa. Aug. 16, 2007) (finding no malicious prosecution where "[t]he legal proceedings were allegedly initiated by the defendants when they filed the police complaint, but the plaintiff's complaint does not contend that the

---

[12] Plaintiff spends much of his brief arguing that he was falsely arrested.  However, Plaintiff has pursued no false arrest

*(continued...)*

defendants imposed any restrictions upon the plaintiffs' liberty after that point or after any arraignment or preliminary hearing. The only seizure alleged is the plaintiff's arrest and that occurred *prior* to the initiation of any criminal proceedings."); *see generally Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) ("Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest.").  Accordingly, while Plaintiff's initial detention when he was stopped by the police and brought back to the police station might support a false arrest claim, it cannot support his Fourth Amendment malicious prosecution claim.

Similarly, the confiscation of Collins's currency cannot sustain a claim of malicious prosecution.  His money was confiscated by Officer Jones, ostensibly as "drug money", and was not returned until after Plaintiff had successfully availed himself of the writ of habeas corpus.  There is no indication, however, that the seizure, even if one could argue it was "ongoing", was effectuated via a legal process initiated by the Defendants.  The Third Circuit has found that in the context of an illegal seizure claim, the claim accrues once the property is initially taken; accordingly, the court held that retention of one's property "may be ill effects of the original seizure, but [it] do[es] not amount to [a] continuing unlawful act[]."  *MacNamara v. Hess*, 67 F. App'x 139, 144 (3d Cir. 2003). *MacNamara* supports the notion that Jones's retention of the cash was not an ongoing wrong.

While we acknowledge that at least one court has found that a seizure of property may be used to support a malicious prosecution claim, consistent with the life, liberty, and property guarantees of the Fourth Amendment, we need not dwell on this point as the only legal process relevant to the confiscation of currency was the attempt to have the money forfeited by way of the

---

claim and we need not consider legal claims which were not pled.

civil forfeiture proceeding which arose after the seizure itself and was, in any event, unsuccessful. *Ayala-Martinez v. Anglero*, 982 F.2d 26, 27 (1st Cir. 1992). Insofar as the civil forfeiture proceeding never resulted in the seizure of currency, it cannot support the Fourth Amendment malicious prosecution claim.[13]

We also note that while, in some cases, the confiscation of a Section 1983 plaintiff's property might not establish the final element of his malicious prosecution claim, an aggrieved party is not left without a remedy. If the property was taken unreasonably, the tort of unreasonable seizure of property may be available. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209 (3d Cir. 2001) (discussing a Section 1983 unreasonable seizure case where a police officer killed the plaintiff's dog); *Pitts v. Delaware*, 646 F.3d 151, 154-55 (3d Cir. 2011) (discussing a Section 1983 illegal seizure claim wherein a police officer unreasonably searched and seized plaintiff's automobile in connection with his arrest). It remains the case here, however, that the deprivations of liberty and property that Plaintiff suffered predated the issuance of his criminal charges and cannot support his claim for malicious prosecution.

We now address whether Collins was deprived of his liberty following the filing of the criminal charges against him. It is clear that he was not physically detained in the traditional sense after he was charged as he was not placed in police custody. This is not, however, necessarily fatal to a Section 1983 malicious prosecution claim in that the state's placement of "constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence

---

[13] In that the money was not seized consequent to legal process, we need not broach the nuanced issue of whether a civil forfeiture proceeding falls within the scope of a "criminal proceeding" for Fourth Amendment malicious prosecution purposes. *See Jones v. Whittaker*, 316 F. App'x 463, 466-67 (6th Cir. 2009) (non-precedential) (finding that the alleged initiation of a civil forfeiture proceeding, pursued under Kentucky's civil forfeiture law, falls under the tort of "wrongful use of civil proceedings" and not the tort of "malicious prosecution").

at a judicial proceeding, [can constitute a seizure] within the meaning of the Fourth Amendment."

*Schneyder v. Smith*, 653 F.3d 313, 321-22 (3d Cir. 2011) (footnote omitted).

Two Third Circuit cases provide guidance in helping us determine when the extent of restriction placed upon one's liberty rises to the level of constitutional infringement. *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998), *as amended* (Dec. 7, 1998); *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). In *Gallo*,

> the legal proceeding was the indictment, and [plaintiff's] post-indictment liberty was restricted in the following ways: he had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania. Although it is a close question, we agree with Gallo that these restrictions amounted to a seizure. . . Supreme Court decisions provide that a seizure is a show of authority that restrains the liberty of a citizen, *see, e.g. California v. Hodari D.*, 499 U.S. 621, 625–27, (1991), or a "government termination of freedom of movement intentionally applied." *County of Sacramento v. Lewis*, 523 U.S. 833, ——, 118 S.Ct. 1708, 1715 (1998). The case law also shows that an actual physical touching is not required to effect a seizure. *See Hodari D.*, 499 U.S. at 626.

*Gallo*, 161 F.3d at 222-23. Contrasted with *Gallo* is *DiBella* where no deprivation of liberty was found. *DiBella*, 407 F.3d at 603. In *DiBella* the two plaintiffs

> were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services. Their liberty was restricted only during the Municipal Court trials and the Fourth Amendment does not extend beyond the period of pretrial restrictions.

*Id.* (citing *Torres v. McLaughlin,* 163 F.3d 169, 174 (3d Cir.1998); *Donahue v. Gavin,* 280 F.3d 371, 381 (3d Cir. 2002)). The *DiBella* Court was reminded that *Gallo* was a "close question" and found that "here there could be no seizure significant enough to constitute a Fourth Amendment violation in support of a Section 1983 malicious prosecution action." *Id.* While "[p]retrial custody and some

16

onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," those minor restrictions were not of constitutional magnitude and could not support a malicious prosecution claim. *Id.; see also Samuels v. Monroe Cnty.*, No. 3:CV-12-2320, 2013 WL 1764822, at *7 (M.D. Pa. Mar. 28, 2013) *report and recommendation adopted*, No. 3:12-CV-2320, 2013 WL 1767671 (M.D. Pa. Apr. 24, 2013) (applying *DiBella* and finding that "Plaintiff Samuels was not arrested, and he was not in pre-trial custody. Nor were there any onerous pre-trial, non-custodial restrictions imposed on him. Plaintiff . . . thus failed to establish a Fourth Amendment seizure with respect to his § 1983 claim").

*Gallo*'s "close call" language was read by our colleague Judge Stengel to indicate that a slight deviation from its facts would be insufficient to establish a Fourth Amendment deprivation. *Lopez v. Maczko*, No. CIV.A. 07-1382, 2007 WL 2461709, at *4 (E.D. Pa. Aug. 16, 2007). In *Lopez* the plaintiff "was required to post $10,000 bail, attend proceedings related to the charges, and communicate with pretrial services." *Id.* at *4. Unlike Gallo, Lopez did not have his travel restricted nor did the charges lodged against him result in a trial. *Id.* Accordingly, the court found that "[i]f *Gallo's* holding was a close call, the absence in this case of [those above] two factors [regarding travel and a trial] that contributed to *Gallo's* conclusion can only result in a finding that a seizure did not occur in this case after the legal proceedings were initiated." *Id.*

Here there is no indication that Collins's liberty was restrained after he was charged other than a requirement to undergo fingerprinting and post $10,000 *unsecured* bail. He received the charging documents in the mail, did not deposit any money for bail, his travel was not restricted, no reporting obligations were imposed, and a trial was never held. We conclude that, as in *DiBella* and *Lopez*, no Constitutional deprivation has been established. Plaintiff's failure to demonstrate a material issue of fact concerning this issue mandates that summary judgment be entered in favor of

both Officer Jones and Chief Priscopo on the Section 1983 malicious prosecution claim.

### B.  Malicious Prosecution Under Pennsylvania Law

Defendants' Motion for Summary Judgment fails to substantively address Plaintiff's state law malicious prosecution claim despite broadly moving for the dismissal of Plaintiff's second amended complaint in its entirety.  (Def. MSJ at 1.)  We will nevertheless consider whether summary judgment is due on the merits as to this claim.

As previously noted, malicious prosecution under Pennsylvania law mirrors the federal standard, except in one important respect.  Pennsylvania courts do not obligate litigants to meet the federal standard's fifth element, a deprivation of liberty consequent to legal process.  *See Bradley v. Gen. Acc. Ins. Co.*, 778 A.2d 707, 710 (Pa. Super. 2001).  Our analysis regarding the federal malicious prosection found that the Motion for Summary Judgment as to Jones was successful only by virtue of Plaintiff's failure to show a deprivation of liberty consequent to legal process, which is not implicated in the state law claim.  As Plaintiff established issues of material fact on all of the elements of his state law malicious prosecution claim, this claim survives Defendants' Motion for Summary Judgment.[14]  At the same time, our determination that Plaintiff has failed to establish that Chief Priscopo initiated the prosecution against him, as set out in Part V.A.2, requires that Priscopo's motion be granted.

---

[14] Given our prior discussion of malice in Part V.A.3., a reasonable jury could find the type of misconduct negating the protection of qualified immunity afforded by Pennsylvania's Political Subdivision Tort Claims Act.  *See* 42 Pa. C.S.A. § 8550 (no qualified immunity when "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct"); *Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 521 (E.D. Pa. 2012) ("only if there is evidence presented in a malicious prosecution case that the officer knowingly initiated prosecution of the plaintiff without probable cause, may a jury find that the officer has engaged in

*(continued…)*

### C.      Vindictive Prosecution under Federal Law

#### 1.      The Constitutional Guarantee

Defendants have moved for summary judgment on the vindictive prosecution claim under Section 1983 asserting that Plaintiff has insufficient evidence to establish a claim of vindictive prosecution.  (Def. MSJ, at 21-22.)  For the reasons set out within, we conclude that this Motion must be granted.

Vindictive prosecution may be established "where a defendant is reindicted or retried after the exercise of a procedural right," *United States v. Spiesz*, 689 F.2d 1326, 1328 (9th Cir. 1982) (citing *United States v. Burt*, 619 F.2d 831, 836 (9th Cir. 1980)), such as the right to appeal his conviction, or where a Defendant is retaliated against with charges or an increased sentence for availing him or herself of other procedural rights.  *See N. Carolina v. Pearce*, 395 U.S. 711, 723-24, (U.S. 1969) *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989) ("It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside.").  This constitutional doctrine therefore invokes the due process protections afforded by both the Fifth and Fourteenth Amendment.  *See Blackledge v. Perry*, 417 U.S. 21, 25 (1974) (due process is offended when a criminal defendant is subject to a more serious charge in a second trial resulting from his decision to appeal).  Vindictive prosecution is more commonly employed as a defense to criminal prosecution.  In criminal cases, a defendant often asserts that the prosecutor acted vindictively, violating his due process rights, by bringing increased charges or

---

willful misconduct.")

seeking an increased sentence after he has availed himself of a particular procedural right; if the

defendant prevails, the charges are dismissed.  *E.g., United States v. Esposito*, 968 F.2d 300, 302 (3d

Cir. 1992).

> A prosecution is vindictive, for example, when a defendant faces
> enhanced charges on retrial and the prosecutor's decision to enhance
> the charges is based on the prosecutor's resentment that the defendant
> successfully appealed his or her original conviction.  Vindictive
> prosecution may also exist when it can be shown that the
> government's actions were motivated by the prosecutor's "personal
> stake in the outcome of a case" or his desire to "seek self-vindication"
> for prior errors that he may have committed in a case.

*United States v. Pittman*, 642 F.3d 583, 586 (7th Cir. 2011) (internal citations omitted).  It has been

said that claims of pretrial vindictiveness are "extraordinarily difficult to prove."  *United States v.*

*Segal*, 495 F.3d 826, 833 (7th Cir. 2007).  To succeed on such a claim of pre-trial vindictiveness, he

would have to present objective evidence of actual vindictiveness.  *See Bordenkircher v. Hayes*, 434

U.S. 357, 364-65 (1978) (no presumption of vindictiveness where charges followed plea bargaining);

*Wasman v. United States*, 468 U.S. 559, 568 (1984) (in scenarios where a presumption of

vindictiveness is absent, one can succeed by showing actual vindictiveness); *United States v.*

*Goodwin*, 457 U.S. 368, 378-89 n. 12 (1982) (actual vindictiveness requires a showing based on

"objective evidence"); *see also United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003).

Presumably because of its origins in criminal law, vindictive prosecution has seldom been

used in civil litigation as a Section 1983 tort.  Most courts[15] faced with such Section 1983 claims

---

[15] While the Third Circuit has yet to rule on the viability of such Section 1983 claims, the weight of authority outside our circuit has found such claims to be actionable via Section 1983.  *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996); *Willhauck v. Halpin*, 953 F.2d 689, 711 (1st Cir. 1991); *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 529 (6th Cir. 2009) (non-precedential); *c.f. LeClair v. Saunders*, 627 F.2d 606, 610 (2nd Cir.1980) (regarding selective enforcement); *but see Puentes v. Cnty. of Santa Clara*, No. C 11-1228 PJH, 2012 WL 253232, at *4 (N.D. Cal. Jan. 26, 2012), *appeal dismissed* (Feb. 28, 2012) ("The court is unpersuaded that a retaliation and/or vindictive prosecution claim pursuant to the Fourteenth Amendment due process guarantee is cognizable pursuant to section 1983.").

have, however, recognized it as a valid cause of action; these courts look to more established criminal case law to guide the standards employed in the civil sphere. *E.g., Willhauck v. Halpin*, 953 F.2d 689, 711 (1st Cir. 1991).

### 2.    The Claims

Plaintiff presented a legal theory in his Complaint, (Compl., Doc. No. 33, ¶ 41), which is entirely distinct from the legal theory he pursued in his brief opposing the Motion for Summary Judgment.  (Pl. Resp., at 12.)  In his complaint, he invokes the Fourteenth Amendment, which we read as implicating the Due Process Clause, and avers that he was subject to prosecution "solely because he failed to cooperate" with law enforcement.   (Compl., Doc. No. 33, ¶ 41.); *see*, *e.g. Willhauck*, 953 F.2d at 711.  He does not, however, assert that he faced any enhanced charges due to his decision to invoke any rights protected by the due process clause.   Rather, he vaguely argues that the decision of the police to pursue charges against him was due to his refusal to cooperate with the police officers.  (Compl., Doc. No. 33, ¶ 41.)   In opposing summary judgment, he fails to point to any specific due process right that may have been violated, let alone any evidence of actual vindictiveness, an essential element of his claim.  *See Bordenkircher*, 434 U.S. at 364-65; *Wasman*, 468 U.S. at 568.  Collins has failed to meet the burden imposed by Fed. R. Civ. P. 56(c)(1) in opposing summary judgment as to this claim.  Fed. R. Civ. P. 56(c)(1); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324-27 (1986).  The Third Circuit has made clear that in opposing summary judgment "[t]he non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way."[16]  *El v. Se.*

---

[16] Alternatively, we do not see how the evidence before us could show any deprivation of his Due Process rights.  In Collins's case, the charges simply followed his refusal to cooperate with police.  Plaintiff's access to procedural safeguards or rights relevant to his pursuit of vindication in court was not in any way threatened or chilled by the actions of the Defendants, which is precisely the constitutional concern that inheres under a claim of vindictive

*(continued…)*

*Pennsylvania Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007) (citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d. Cir. 2006)); *Berckeley,* 455 F.3d at 201 ("[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").  We conclude that summary judgment must be entered in favor of Defendants on this claim.

Collins argues in his Response to Defendants' Summary Judgment Motion that he was prosecuted for an entirely different reason, forgoing his original theory entirely.  (Pl. Resp., at 12.) He argues that the prosecution came about because of his filing of his private criminal complaint against Defendants.  (*Id.*)  This theory, as Defendants have apparently anticipated, seems to suggest a First Amendment retaliation claim, (Def. MSJ, at 21.), which has not been pled.  *See Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 857 (E.D. Pa. 2000) ("There is no ambiguity in the law guaranteeing the Plaintiffs' First Amendment right to petition the government for redress of grievances."); *see also Cossio v. Castro*, 444 F. App'x 83, 85 (7th Cir. 2011); *Long v. Robinson*, No. CIV.A. 00-3369 MLC, 2002 WL 35072908, at *3 (D.N.J. Apr. 12, 2002).

This claim, made for the first time in his response to the motion, cannot stand.[17]  In the Third

---

prosecution.  *See, e.g. Pearce*, 395 U.S. at 723-24; *Blackledge v. Perry,* 417 U.S. 21, 28–29 (1974); *Pittman*, 642 F.3d at 586.  Plaintiff has presented us with no authority to support the argument that his claim is cognizable as a claim of vindictive prosecution.  Insofar as Plaintiff is simply arguing that the prosecution was one pursued wherein Defendants had a "lack of belief … in the propriety of the prosecution[] or[] use[d it] for an extraneous improper purpose", *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir.1993), *abrogated on other grounds*, *Albright v. Oliver*, 510 U.S. 266 (1994) (internal quotations omitted), such a cause of action is coextensive with his aforementioned claim of malicious prosecution.  *C.f. Gagliardi v. Fisher*, 513 F. Supp. 2d 457, 475 (W.D. Pa. 2007) (finding a vindictive prosecution claim, under the Fourth Amendment, was not distinct from the plaintiff's malicious prosecution claim).  We do not find that a malicious prosecution claim which happens to include an accused's not uncommon decision to forgo cooperating with law enforcement prior to the filing of charges transforms his tort into one of constitutional dimension.   Accordingly, we do not find that the criminal charges, pursued after the refusal to cooperate with law enforcement, have deprived him of his constitutional rights.

[17] We note that Plaintiff pursued a claim of First Amendment retaliation based on his refusal to cooperate with law

*(continued…)*

Circuit, claims where criminal prosecution is unconstitutionally pursued in retaliation for taking action protected by the First Amendment are pled not as Fourteenth Amendment vindictive prosecution claims but rather as First Amendment retaliation claims, a distinct constitutional tort. *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997); *Favata v. Seidel*, 511 F. App'x 155, 158 (3d Cir. 2013); *Russoli*, 126 F. Supp. 2d at 857. This Plaintiff has failed to do. We will not consider a claim that has not been pled.

### D. Vindictive Prosecution Under Pennsylvania Law

Defendants have moved for summary judgment as to all claims yet they have failed to substantively address the state law vindictive prosecution claim. (Def. MSJ at 1.) Plaintiff similarly failed to address this state law claim. We have therefore been provided no authority to guide our inquiry. Nevertheless, our research has yielded no cases or other authority indicating that Pennsylvania law recognizes a tort of vindictive prosecution.[18] Accordingly, we grant summary judgment in favor of the Defendants as to this claim.

### VI. CONCLUSION

We have found that there are no issues of material fact as to the Section 1983 malicious prosecution claim against both the Defendants and that Defendants' Motion for Summary Judgment must be granted as to that claim. We will not grant summary judgment as to the state law malicious prosecution claim against Officer Jones; however, we will grant summary judgment on this claim in favor of Chief Priscopo given the dearth of evidence showing that he initiated the prosecution. We

---

enforcement, as opposed to the filing of his criminal complaint, in his First Amended Complaint. (Doc. No. 17, at 8, ¶ 44-47.) This claim was dismissed, without prejudice, by Judge Baylson on July 1, 2014. (Doc. No. 28; Doc. No. 29, at 9.) Collins, however, did not pursue any claim of First Amendment retaliation in his Second Amended Complaint which is devoid of any reference to the First Amendment. (Compl., Doc. No. 33.)

[18] The absence of a state law tort analogue is unsurprising in that vindictive prosecution is a legal claim or defense employed to vindicate one's constitutional due process rights. *See United States v. Esposito*, 968 F.2d 300, 302 (3d

*(continued…)*

have found that there are no issues of material fact as to the federal and state law vindictive prosecution claims against both the Defendants.  Defendants' Motion for Summary Judgment is granted as to those claims.  The John Doe Defendants are also dismissed.[19]

Consequent to the resolution of the federal claims, our original jurisdiction ceases to exist.  However, given the proximity to the scheduled trial date and the need for judicial economy, we elect to continue to exercise jurisdiction over the matter.  *See* 28 U.S.C. § 1367(c)(3); *Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n*, 90 F.3d 797, 801 (3d Cir. 1996).  An appropriate order follows.

BY THE COURT:


/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

---

Cir. 1992).

[19] Given our resolution of the Motion for Summary Judgment on the record before us, we deny Defendants' request for oral argument.  (Doc. No. 39, at 2.)