IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMAR COLLINS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RICHARD JONES | : | NO. 2:13-cv-07613-DS |
| Defendant | : | |
| | : | |

**<u>Memorandum Opinion</u>**

DAVIR R. STRAWBRIDGE                                                                                      November 19, 2015
UNITED STATES MAGISTRATE JUDGE

## I.   Introduction

Before the Court is Plaintiff Lamar Collins' ("Plaintiff" or "Collins") "Motion for Post-Trial Relief" (Doc. 83) and "Memorandum of Law in Support of Post-Trial Motion" ("Pl. Brief") (Doc. 86) and "Reply of Defendant, Richard Jones, to the Post-Trial Motion Pursuant to Rules 59(a) and 60(b) of Plaintiff Lamar Collins" ("Def. Brief") (Doc. 89). Plaintiff seeks post-trial relief under Fed. R. Civ. P. 59(a) and (e) and Fed. R. Civ. P. 60(b)(1) and (6), asserting that the defense verdict was against the weight of the evidence and that the Court committed "reversible error." The error assigned was the Court's preclusion of a state police laboratory report negative for controlled substances and defense counsel's allegedly impermissible comments during closing argument. We address each issue in turn.

## II.   Standard of Review

Plaintiff filed his post-trial motion under Fed. R. Civ. P. 59(a)(1)(A) and (e) and 60(b)(1) and (6). Under Fed. R. Civ. P. 59(a)(1)(A), the court may grant a new trial on all or some issues "for any reason for which a new trial has heretofore been granted in an action at law in federal

court," including whether the verdict is supported by the weight of the evidence or was tainted by the exclusion of meaningful evidence or the conduct of counsel. *Corrigan v. Methodist Hosp.*, 234 F. Supp. 2d 494, 498 (E.D. Pa. 2002), *aff'd*, 107 F. App'x 269 (3d Cir. 2004); *Ne. Women's Ctr., Inc. v. McMonagle*, 689 F. Supp. 465, 468 (E.D. Pa. 1988), *aff'd in relevant part*, 868 F.2d 1342 (3d Cir. 1989); *Vandenbraak v. Alfieri*, 209 F. App'x 185, 189 (3d Cir. 2006) (citing *Draper v. Airco, Inc.*, 580 F.2d 91, 96 (3d Cir.1978); *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 207 (3d Cir.1992)).

Fed. R. Civ. P. 59(e) allows parties to file a motion to alter or amend a judgment. The proper purpose of the motion "is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). Thus a proper Rule 59(e) motion must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Neither the first nor the second ground could be said to apply to Plaintiff's motion.

Under Rule 60(b)(1) and (6), the court may relieve a party from a final judgment due to "(1) mistake, inadvertence, surprise, or excusable neglect" or "(6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1)(6). Relief under Fed. R. Civ. P. 60(b) should "be reserved for those cases of injustices which . . . are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata." *U.S. v. Beggerly*, 524 U.S. 38, 46 (1998). The movant under Rule 60(b) "bears a heavy burden" and the court views Rule 60(b) motions as "extraordinary relief which should be granted only where extraordinary justifying circumstances

are present." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir.1991) (internal citations and quotation marks omitted). This burden is not met here.

Finally, Fed. R. Civ. P. 61 makes clear that "no error in admitting or excluding evidence-- or any other error by the court or a party--is ground for granting a new trial . . ." unless "justice requires otherwise." This determination is "confided almost entirely to the . . . discretion . . . of the trial court." *Shanno v. Magee Indus. Enter., Inc.*, 856 F.2d 562, 567 (3d Cir.1988) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)). For the reasons set out within, and guided by these principles, Collins presents us with no compelling reason to grant a new trial or to permit relief from the entry of judgment.

### III. Discussion

Rulings on various Defendants' motions to dismiss and for summary judgment left Collins to pursue a single claim at trial for state law malicious prosecution. To establish that claim, he had to prove that the defendant, Officer Richard Jones, instituted proceedings against him: 1) without probable cause, 2) with malice, and 3) where the proceedings must have terminated in favor of the plaintiff. *McKibben v. Schmotzer*, 700 A.2d 484, 492 (Pa. Super. 1997); *Bradley v. Gen. Acc. Ins. Co.*, 778 A.2d 707, 710 (2001). As the proceedings against Plaintiff were terminated in his favor, the jury had to consider only the questions of probable cause and malice.

#### A. The Exclusion of the Laboratory Report

The uncontested evidence here showed that Collins was detained on October 20, 2012 by Officer Jones and found to be in possession of a substance which field tested positive for marijuana. (N.T. 6/24/15, 74-76, 87, 110, 129, 149.) On October 20, 2012, prosecution was

initiated against him for possession of a controlled substance and possession of drug paraphernalia. (*Id.*) Following the positive field test, the police had the residue of what had been in two bags with the field tested material submitted to the state police laboratory for testing. (N.T. 6/24/15, 148-51.) That test came back negative in a report dated January 2, 2013. (Pl. Brief Exhibit C.)

Collins argues that the Court improperly denied his request to accept the state police lab report into evidence, and that this error requires a new trial. (Pl. Brief 2-3.) Plaintiff's position fails for multiple reasons. First, the gravamen of Collins' claim, the underlying initiation of a criminal prosecution, is dependent upon whether he can show a lack of probable cause and malice by Officer Jones at the time the prosecution was initiated, here, October 20, 2012. We note that probable cause to stop Collins' car was not contested, while probable cause to initiate a prosecution is.[1] Officer Jones testified that after he stopped Collins he detected "a strong odor of marijuana" coming from his car and that he could see "a plastic bag laying [sic] flat on the front seat with transparent sides." (N.T. 6/24/15, 129-130.) When he searched the car, Jones saw "chunks of what was clearly marijuana" stuck to two plastic bags lying on the passenger seat. (*Id.* at 133.) He observed "a larger Ziploc freezer-type bag that was sealed" which contained money that was "rubber banded together." (*Id.*) The money seized consisted of 120 twenty-dollar bills, twenty-three ten-dollar bills, twenty-seven five-dollar bills and 147 one-dollar bills (Trial Exhibit D-1, Property Receipt), which Jones testified was "very consistent with narcotics trafficking." (N.T. 6/24/15, 147.)

---

[1] Prior to trial, the parties stipulated that "[t]he vehicle stop in this case is not an issue in this lawsuit. This lawsuit involves only what happened following the stop." (Doc. 56.)

4

It is evident that probable cause for the prosecution was established by the officer's testimony and the positive field test. The January 2, 2013 lab report, generated more than two months after the initiation of this prosecution, does not contain a fact "of consequence in determining the [malicious prosecution] action" and does not have a "tendency to make a fact more or less probable." *See* Fed. R. Evid. 401. The fact of consequence here was the field test on October 20 and not the testing done in January in a state police laboratory. That test does not affect the presence or absence of probable cause as of October 2012 when the prosecution was initiated.

Collins asserts that the lab test is relevant and admissible as it may have impacted the credibility of Officer Jones. (N.T. 6/24/15, 24-30; Pl. Brief 2-3.) To establish this proposition, Plaintiff would have to show that the test results were accurate and reliable. This Plaintiff was not prepared to do. Rather, he proposed that he would put the January report before Officer Jones, ask him to identify it and testify to its content, including the conclusion. (N.T. 6/24/15, 24-30; Pl. Brief 2-3.) This request was denied. (N.T. 6/24/15, 29.)

Collins' proffer lacked any witness who would testify about the test, the manner and means by which it was undertaken, the reliability of any results, or even the chain of custody of the material that was tested. Collins wanted the jury to take note of the lab report in considering the credibility of Officer Jones. He was thus asking the jury to consider it to be "true" – or accurate and reliable.

Here, a distinctly scientific method was used to determine that the material tested in the state police lab was negative for the presence of controlled substances. For the scientific evidence to be admitted, it must be "not only relevant, but reliable." *Daubert v. Merrell Dow*

5

*Pharm., Inc.*, 509 U.S. 579, 589 (1993). Where evidence is derived from a scientific method, *Daubert* teaches that it "must be supported by appropriate validation—i.e., 'good grounds,'. . . [i]n short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Id.* at 590. Collins asked us to assume the reliability of the lab report including the procedures utilized and the scientific principles involved, without any foundation or witness prepared to testify as to its reliability. His request was properly denied.

Collins next argues that the lab report is a business record under Fed. R. Evid. 803(6), as "a self-authenticating document" that does not require a witness. (N.T. 6/24/15, 32.) This is plain misstatement of Rule 803(6). The Rule reads as follows:

> (6) **Records of a Regularly Conducted Activity**. A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) *all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification;* and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6) (*emphases added*). The Rule does not permit self-authentication, and, in fact, explicitly requires a custodian or "another qualified witness" to testify to its reliability. The Court offered Collins the opportunity to present a custodian or other "qualified witness" who could authenticate the lab report but he failed to do so. (N.T. 6/24/15, 31-32.)

6

Plaintiff points to two DUI prosecution cases to support his position that no witness is necessary to testify to the lab report's reliability – *Commonwealth v. Brown*, 631 A.2d 1014 (Pa. Super. 1993) and *Commonwealth v. Karch*, 502 A.2d 1359 (Pa. Super. 1986).  In *Brown*, the Pennsylvania Superior Court explained, in a footnote, that a blood-alcohol test offered by the Commonwealth without the testimony of the lab's custodian of records, was properly admitted because Pennsylvania law "permits the use of copies of medical records to be proved as to foundation, identity and authentication without any preliminary testimony, where the records are certified in a manner consistent with the statute."  *Brown*, 631 A.2d at 1015 n.2.  The Court then noted the applicable state statute pertaining to medical charts or records of a health care facility licensed under the laws of the Commonwealth.  *Id.*  In *Karch*, the Pennsylvania Superior Court held that a blood-alcohol test on the defendant was admissible without testimony from the technician who performed it, because a physician testified describing the equipment and procedures used, as well as the qualifications of the technician.  *Karch*, 502 A.2d at 1361.  These cases stand in stark contrast to Collins' proffer here.  In *Brown*, the evidence was admitted pursuant to a state statute which established its reliability and in *Karch*, the evidence was admitted through the testimony of another qualified witness who was able to establish the report's reliability.   Neither circumstance applies here.

Even if we accepted Collins' argument that the exclusion of the lab report was improper, such an error would be harmless.  In conducting a harmless error inquiry, the court must look at the impact of the error on the trial as whole.  *Yohn v. Love*, 76 F.3d 508, 523 (3d Cir. 1996).  The court must ask "whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error."  *Id.*  Here, the alleged error, if found, would have had no influence on the final verdict in that the jury was already made aware of the fact that

7

the charges against Collins were ultimately dropped. The January 2013 lab report provided no evidence of lack of probable cause or malice at the time of the initiation of the criminal prosecution. Accordingly, the perceived error which precluded the admissibility of this report was harmless and would not have substantially influenced the jury's verdict.

### B. Defense Counsel's Closing Argument

At the end of trial, during closing arguments, Officer Jones' counsel stated:

> You have to catch drug dealers with other either drug dealers or drug users. And in a situation where we have here, we had a trafficking issue. It was a trafficking issue with the way the money's packaged. It was a trafficking issue with the way the bags had residue in them. And clearly with the smell of marijuana, not being some guy smoking it in the vehicle, but rather emanating from the actual bag you've got a trafficking situation.

(N.T. 6/25/15, 32.)

Collins argues that Defendant's counsel's closing argument was "impermissible," in that she referred to him as a "drug trafficker" and that this entitles him to a new trial. (Pl. Brief 3-4.) While Collins now asserts that the statement was "unsupported by the evidence, outrageous, and necessarily inflamed the jury to perhaps believe it true or otherwise lead to the defense verdict," he failed to object to the statements when they were made. Rather than objecting, he stated:

> There's a reason why the Judge instructed you that the arguments of counsel are not evidence. I just heard an argument that Lamar was a drug trafficker. There's absolutely no evidence of that whatsoever, and I guessed as to use the Defendant's position, the best defense is a good offense. Place him as the person who has tortured Officer Jones and not the other way around. He's a bad guy. But I also heard that was a little case. In fact, we heard a witness up there say it was a summary defense [sic] or a misdemeanor. It was a little case. So was he a drug trafficker or is it a little case? It's neither. It's no case.

(N.T. 6/25/15, 37.)  Counsel thus chose to confront the "drug trafficking" statements in his own closing by rebutting them and arguing that the defense was overreaching.  (*Id.*)  It is well-settled that a party who fails to object to errors or to raise issues at trial waives the right to object following trial.  *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998); *see also Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir.1979) (holding that "[c]ounsel's failure to object precludes him from seeking a new trial on the grounds of the impropriety of opposing counsel's closing remarks.").  The Plaintiff cannot be heard to allow what he perceives to be improper argument remain without objection, await the result, here a defense verdict, and then complain about prejudice to his client.  We deny Plaintiff's motion for a new trial on this ground.[2]

**VI. Conclusion**

For the abovementioned reasons, the Court finds that the jury's verdict for Defendant and against Plaintiff was not against the weight of the evidence and was not the product of legal error.  Plaintiff's motion for post-trial relief is denied.

BY THE COURT:

 /s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

---

[2] In any event, the Court observes that Defendant's counsel's remarks were consistent with the evidence in that Plaintiff made calls to a drug supplier seeking a pound of marijuana after he was detained in an effort to cooperate with police. (N.T. 6/24/15, 138.)